Ultratech v. Tamarack Scientific Mr. Weir, is that the correct pronunciation of your name? Yes, it is. Thank you. Very good. You may begin when you're ready. May it please the Court, Jan Weir for the appellant and defendant below Tamarack Scientific, Inc. If I may, I'd like to address the issue of intent on inequitable conduct first, and then I'll talk about the general issues on exceptional case. And I'd like to direct the Court to specifically the appendix at page 769, and in particular 797. The document at appendix 769 is the 1992 comparison between the Level A 1990 offer for sale of a programmable cognitive pattern recognition system to IBM and the 1992 offer for sale, which is Level B. In 1992, in late July, the date's down at the bottom, Ultratech was able to go back through its historical files, two years. They were able to make the connection between the old offer for sale and the new IBM request for quote. And they were able to compare the two in detail. And if you look on page of the appendix 797, you will see under paragraph 6.1, under operation to be performed, there's a line about five foot down that says no change. Mask alignment using Cognex pattern recognition. In other words, they are saying there's no change in using this Cognex pattern recognition. Now this document was found in Mr. Markle's files. He admitted he received it. And he admitted that he was aware of this 1990 offer for sale in November of 1992, at the time that he started to prepare the patent application in this case, which claimed programmable pattern recognition and described Cognex as the preferred embodiment. Mr. Markle, during the prosecution of the patent, submitted two declarations under oath, distinguishing the prior art on the ground that it did not have a programmable pattern recognition system like Cognex, the very thing they had offered for sale two years before the filing of the patent. Now in Criticon, this court said, a patentee facing a high level of materiality and clear proof that it knew of that materiality can expect to find it difficult to establish subjective good faith, shift sufficient to prevent a drawing of an inference of intent to deceive. Now in this case, what was Mr. Markle's explanation for failure to disclose that offer for sale or filing the patent in the first place? He said he didn't connect the on sale with the duty not to disclose or the duty not to file the patent. He didn't connect the two. So he knew he couldn't get a patent on something that was on sale more than one year. He admitted that. But he didn't connect in his mind the fact that they had offered it for sale more than one year before. So the right side of the brain apparently wasn't talking to the left. The problem, of course, to cut to the chase, is that the trial judge believed him. Exactly. And the question for us then is, what are we going to do? Are we going to say that when you have a situation in which the evidence is in the record that would provide both the fact that at some point the individual in question had the requisite knowledge and that there is materiality, that a protestation that one has forgotten, in effect, the pertinent fact, will simply not be accepted? The trial judge shouldn't accept it, and we won't accept it if the trial judge does. I think that's essentially your submission in this case. It may be oversimplistic, but I think that's what it comes down to. It is very close, with the caveat that he's not saying he didn't remember. What he's saying is he didn't connect the two. Well, maybe there's a shading difference there, but I think we're in the same ballpark in our characterization. And that's really the problem here, because if that were the standard, then it requires us. The judge found that we proved intent to see by preponderance of the evidence. He said we just didn't meet the clear and convincing standard. So what he required us basically to do was to prove what was in Mr. Markle's mind back when he filed this application, to prove that he did make the connection, which is a burden this Court has never imposed on us. The clear and convincing standard does not require that. So it also, just from a practical standpoint, it makes no sense. It would destroy the duty of candor. It's an affirmative duty, and to have somebody come in and say, well, I knew about my duty, and I knew about the acts, but I didn't connect the two, and you have to prove that I did, would just emasculate completely the duty of candor. Well, suppose, and this is obviously not the facts of this case, but suppose you have somebody who is elderly and has had, let's say, some problems, just hypothetically a stroke, and knew perfectly well at some time about the alleged invalidating event, but simply comes in and says, gosh, you know, I forgot all about it when the time came to sign the patent application. That would certainly, you would accept, I take it, wouldn't you, that that would be a sufficient demonstration of non-intent to deceive? I hesitate to say yes, but I suspect that probably that would be a factor that someone would have to weigh. And if you say that that's a factor that a district judge could look at and say, I find there's just not intent here, then it seems to me that once you accept that, you've got to say that somebody who has a bad memory, me, for example, is somebody who equally does not intend to deceive the patent office. If I can make a sufficiently persuasive case that that was a failure of memory on my part. But that ignores the fact that Mr. Markle did testify at the hearing that he did recall the offer for sale in November of 1992. He did recall it. His testimony is very carefully worded. You should take a look in particular at the testimony at A1109. Mr. Markle originally testified that he did make the connection. Then on cross-examination, I reminded him that in his deposition he said he didn't remember anything about 1992. He then explained his testimony, and at page A1109, lines 13 through 15, he said, if you ask me, did I connect our response to IBM with our 813 patent, the answer would be I had no recollection of ever connecting the two. I have no recollection of ever connecting the two. Now, the judge got confused by that answer, I got confused by that answer, and we went on to examine him in the following page, and he repeated, I have no memory of ever connecting the two in my head today. That's on A1110, lines 2 through 3, and he repeated that again at 1516. So what he's saying is, this is a bright man. He's saying, as I sit here on this stand today, I can't tell you whether I ever connected it one way or the other. I have no recollection of doing that. So when you think of the burden that we met in this case of showing, here's a person who was involved in the sale, who was involved in the patent prosecution. We had him, we had a smoking gun document that showed that he was reminded of the transaction just before he files the patent application. We have him admitting on the witness stand that he recalled the transaction at the time he filed the patent. All we're left with is him saying, well, the defense to that, this court talks about the burden shifting once we make a prima facie case. The defense to that is, well, I didn't connect the two. And it just can't be regarded as a plausible explanation for failure to disclose an on-sale bar. Again, it completely emasculated. It's like the gentleman that was here before. He apparently missed the argument. I knew my duty. I knew the acts I did, but I didn't connect my duty with the acts that I did in violation of the duty. Or someone taking an oath to testify on the witness stand and saying, well, I didn't connect taking an oath to tell the truth with actually telling the truth. Mr. Markle signed a declaration at the time that he filed the patent. And that declaration represented affirmatively that this invention was not on sale. And I would submit that the reason why the Patent Office requires that declaration is to put the fact that the thing has been on sale or offer sale directly on somebody's radar screen to make them make that connection. And he signed it anyways, even though he admitted he remembered it. It isn't a problem here, though, that Judge Breyer not only believed Mr. Markle, but he explained why he believed his statement that it just was not on the radar screen. It wasn't simply a, well, that's what he said, that's it. There were a number of factors that Judge Breyer pointed to that gave him some basis to reach that conclusion. And they're all, as I see them, credibility-based conclusions that are very, very difficult for us to overturn. Again, the fundamental question here is substantial evidence or is this going to be the standard? But look at each of the things that Judge Breyer relied on. Every one of them had nothing to do with it. Well, I guess clear error rather than substantial evidence. Well, yes, but was there substantial evidence to support? Yes, you're correct. It is clear error. But Judge Breyer said, for example, Mr. Markle didn't author the offer for sale. Is there any requirement in law that somebody who knows about something have to author it? He admitted he knew about it. That has nothing to do with anything. Mr. Markle, the other argument was nobody talked about it during the prosecution. Is there a requirement in law that somebody who has an offer for sale has to have an ongoing correspondence or discussions with somebody throughout the prosecution in order to show inequitable conduct? There's no real connection. He admitted he knew about it. Mr. Markle had correspondence with other individuals, not one of which was involved in the offer for sale. So he writes, he asks people in Japan what they did to offer the device for sale. It has nothing to do with the IBM office. They weren't involved. That's like me asking you gentlemen, what movie did I go to last weekend? And you saying you don't know, and me offering that as proof that I don't remember what movie I went to, even though I do remember what movie I went to. Mr. Markle said he remembered the event. That was his admitted testimony on the witness stand. I see I'm leaking into my rebuttal time, so I'd like to stop if I can. Thank you. We'll reserve the remainder of your time. Mr. Russo. Thank you, Your Honor. May it please the Court, my name is Jack Russo with Russo & Hale of Palo Alto. I'm proud to be representing Ultratech here as I was before at least two of you in the previous appeals that you heard and rendered a decision on without an opinion. On this appeal, we think Your Honor's have it correct just by the tenor of your questions. I want to make six points if I can within the 15 minutes. Three procedural, three substantive. I think they cover the waterfront without repeating the brief, but procedurally, there's no appeal of Judge Breyer's decision that there was absolutely no violation by any attorney of 28 U.S.C. 1927. That's untouched here on appeal. Therefore, this whole argument about the exacious litigation as we see it is no longer before you. Two, procedurally, what they want, if you look at their reply brief, they want Your Honors to actually make a finding that's impossible, that the 813 patent was obtained by inequitable conduct. They say that at page 16. We've never had a trial on inequitable conduct. What Your Honors are being told by counsel was some sort of offer of sale. Now, the district judge in his October 12th, 2004 order said there were triable issues of fact as to whether there was a 102B off for sale of the Ultratech device. In this case, counsel makes it sound like it's an undisputed fact. It was a disputed fact, which previously was denied. So procedurally, they want you to do something that you can't do. Procedurally, they want you to effectively overturn the judge by taking your shoes. And third, what we have is what appellants seem to want here is for Your Honors to essentially replace the credibility determinations of the court. They're not asking simply for remand that supposedly the judge should spell out further why he decided something or why he didn't decide something. But they want you to go much further. The three substantive points are, the first one is, Your Honors are being asked to effectively ignore what happened at the August 9th, 2005 trial. And that's in the transcript. And if you're going to read anything, you have to read that. Because this is not just a district judge who I said previously was hardworking. I said to Your Honors, you may remember, recall. I don't know if you recall. It was not that long ago. I recall. But I said, this judge worked hard. We think he got the marker interpretation wrong. We think the secret art area is very confused and needs a judicial opinion. You chose not to do that. But if you look at what he did on August 9th, he not only heard the evidence, he was an activist judge. I'm just going to pick so you folks have it. A half dozen. These days, the term activist judge probably isn't regarded as widely as a compliment. Well, Your Honor, he was definitely not asleep at the wheel. I have to tell you, counsel pointed out that he took over the questioning for Mr. Ware. At one point, he decided that he was the better cross-examiner of Mr. Markle. So, for example, if you turn to page A1110, he says, the court says, and he's taking over the examination for me because I'm going through the direct. He decided that I would put the direct examination on, that Mr. Ware would cross on that. Now, he said, I think the question, what he's asking, or at least what I'm asking, what I as a judge am asking, and this is at page A1110, which is page 21 of a lengthy transcript, some hundred odd pages. I think I'm asking, going back to 1992, at the time you were considering filing what became the 813 patent, going back to that period of time, do you recall whether or not you thought, you thought, well, I remember this thing that happened in 1990, but I don't think that pertains to 1992, or do you just have no recollection of that? And this is the judge facing the witness and cross-examining him. In other words, did you think about it and reject it, or did you not think about it, or do you know what you thought? Answer, I have no memory of connecting the IBM response with my investigations on the 813 patent. Now, let's remember, affirmatively, Mr. Markle went out and sent memos out saying, tell me whether there's an offer of sale, because he has been either an inventor or a co-inventor on some 45-issue patents. He more or less understands this area. He's not a lawyer, but he wanted to know whether there was an offer of sale. And still, to this day, there's no ruling by the district judge that there's an offer of sale. There's a 102B offer in this case. It's not true, because we've never had that trial. The court went on to say, and this is at line 17 on the same page, when you say I'm a little unclear in my mind whether what you mean by connecting is two, I believe there's a relevance to it, that is a connection between it, or do you believe there is no connection between? And so what I'm really asking is whether or not when you were dealing with the situation in 1992, you even thought in any way about the 1990 IBM issue. The judge goes on to say, and I think the answer is, if I may suggest, I have no recollection, I don't know what I thought, or yes, I remember thinking about it, but I rejected it. And the answer comes back as I have no memory of thinking about it. The IBM proposal in terms of its relevancy to our 813 patent. The court goes on. You mean whether or not it's relevant? And the witness says, right, I have no memory of that. That's one small sample. I have six other examples. There were probably a dozen or more direct questions by this judge, specifically, substantively probing his memory. What was going on? What did you think about? When counsel says that memo was supposedly in front of the witness, it was in his file. He never testified, I read that memo as part of doing this and probed it. His testimony was, that memo was in my file. I don't recall reading it. So I don't know where this stuff is being made up from, that supposedly there was a 102B offer of sale when the district judge's order from October of 2004 says otherwise. And when there's a statement here being said that, oh, the witness had in front of him this document, this comparison document, and therefore he should have disclosed that. Now, let me make a further procedural point. And this one should have been more reflected in our brief than it was. There was one witness at this hearing, and the hearing went on for a number of hours. In fact, my memory is over three hours. And Mr. Ware and his team of lawyers were there. We were there as well. And no time did Mr. Ware say, oh, I want to call a few other witnesses. What about the patent attorneys? He didn't put the patent attorneys on. He didn't try to go further. He's here complaining that he didn't carry his burden of clear and convincing evidence. But he doesn't say to you, well, the district judge refused to allow me to put other witnesses on. In your various cases, Your Honor, you talk about how if it's just one person versus a collection of persons. In this case, the district judge was very clear. Mr. Markle didn't have communications with other people about this. The communications he had was to ask what was going on, because he's not a salesman. He's a technologist. So substantively, the second substantive point is you have to decide, and we think it's pretty clear, is this a paragon kind of case where you say the district judge could not do anything but conclude that there was a clear offer of sale and that offer should have been disclosed to the patent office, which happened on summary judgment and paragon? Or is it like your most recent Warner-Lambert case, where the decision was the scientists testified that they really didn't focus on a particular drug that a third party had, so they didn't think it was relevant to provide it to the patent office, even though after the fact, the district court said it was highly relevant. And after taking testimony and making specific credibility determinations, the district judge says, I've made a decision. And I think if you line up your cases from a big-picture point of view, what I think you're saying is when I look at the cases, and there's a very recent one involving Baer and Dr. Housey that was recently, it's not cited for a decision, but there's a published district court ruling where there was a remand to the district court because the district court found wrongful intent, but there wasn't enough in the record as to what he based his finding on. What she based her finding on, and it was one your Honor had. So I think when you align your cases, really they line up around three questions that have to be asked when you're faced with this inequitable conduct type of issue. Here's a question that I have, and you alluded to the Paragon case, so you're familiar with it. Yes. We have said in cases having some of the same characteristics that this case does, that if a summary judgment motion is filed on seeking a declaration of inequitable conduct, it is not enough for the respondent simply to say, I didn't intend to mislead the patent office, therefore let's have a trial. I think the gist of Paragon is to that effect. Yes. Why isn't, let me put the question this way. If this case had come up on summary judgment and Judge Breyer had looked at the summary judgment pleadings and Mr. Markle's assertion had been, I did not have intent to deceive the patent office, why wouldn't it have been appropriate for Judge Breyer to grant summary judgment of inequitable conduct? Now, for the moment, I'm assuming that he then went ahead and found that the material was invalidating matter. Okay. Your Honor, just to correct you hypothetically, the case did first come up on summary judgment. I understand. And the judge denied it. I know. And of course, that issue is not before us because you can never look at the question of a denial of summary judgment. But my question was, in a situation like this, why don't Paragon Podiatry and Farring Bevey tell us that summary judgment should be granted? And why isn't there a tension between this case and that, and those? Because in this case, you don't just have this bare denial. Counsel is oversimplifying what happened. Right. You don't have to believe me. Just look at the judge's decision starting at page 8 where he goes through after stating all the facts that he's saying weigh in one direction, namely in favor of a view that perhaps there should have been some disclosure, there should have been this, there should have been that, making the assumption that, in fact, it's an invalidating offer of sale because his previous ruling was we were to get a trial on that. And we didn't try that on August 9th. We were focused solely on intent. Then he starts and he says there's at least six reasons. And he goes through those six reasons starting at page 8. He says there's no discussion between six different co-inventors or at least they didn't get the witnesses up there to testify otherwise. The burden was on them. Mr. Markle testified they had other witnesses they could have called. They chose not to call them. Number two, he was not the primary author on this response to the IBM request for proposal. Remember what happens here. Yeah, I'm familiar with each of the reasons. I guess the question I have is really if I, as the affiant in response to a motion for summary judgment of inequitable conduct, respond that I just don't recall the invalidating material. It's not enough. Not enough. I have to say I don't recall because, and here's the reason I don't recall, that I wasn't that much involved in it or something like that. That's enough, you think? The best statement I can give you to answer your question is out of your own cases, the Warner-Lambert case, where the statement that was made is that the investigation is very much a contextual investigation. You have to look at everything that's going on at the time. Remember, this patent application is filed in January of 1993. The critical date is January of 1992. Counsel wants to go back not to the August 1992. That's not invalidating. He wants to go back to the April 1990. We're talking, by the time of the application, nearly three years have passed from when IBM first issued a request for proposal, which this witness testified, and you'll see it in the August 9 transcript. There's hundreds of these things that come in. All the time, companies are coming in saying, will you build something for us? And IBM just was one of them. It didn't result in a sale. So contextually, you look at these other facts. It didn't result in any negotiation that this witness went to or that he testified about, because there was none. There was no actual transaction documents created between IBM and Ultratech. There was not actually a negotiated deal. It was sort of like if the court said, we want a better audio taping system than what we have, and you send out a request for proposal to 20 vendors, and one of them responds, and maybe lots of them respond, and no one gets the contract, or somebody else gets the contract. Is that something that's going to bear on your mind? Is that something that's going to be a burning decision? He did show his good faith by going out. In fact, there's several memos asking people in the business office at Ultratech, when is it that we made any quotations? What's out there? Tell me what's going on. And the judge credited that in his decision. That was an important point. And I think the highlight of when the judge credited him, Your Honor, and it seems to be ignored by counsel, but I have to tell you, this judge, and I'm obviously not reading all the passages, this judge was asking specific questions as this hearing went along. Very actively asking questions, and at one point he just looked at the witness, and it was about two-thirds into it, and he said, you know, I just have to ask you, so when is it that finally it dawned on you that there was this stuff going on between IBM and Ultratech? When is it that occurred? And he said, frankly, it occurred when Mr. Ware took my deposition. At the point that he took my deposition, he showed me some stuff, which I had not seen, I had not seen, I had not remembered, I had not even given to the trial lawyers, I could tell you. We didn't have it. The judge certainly agreed with our representation on that. I make that same representation to the court. We didn't have it. And he said, you know, frankly, at that point, the light bulb went off that, oh, they have some stuff from IBM, but even then, I didn't necessarily view it as relevant to the patent as we interpret our patent. Now, Judge Breyer disagreed with our interpretation. Your Honor disagreed with our interpretation. Apparently, the patent was much, much broader than we ever viewed it, and the view was that this was disabling, even though we never actually got to try the offer of sale issue. So I would just repeat, Your Honor, this is a case where I think they're asking you to wipe out Warner-Lambert. You would have to, in effect, say that recent case from 2005 that says it's a contextual exercise. And I think you'd have to also wipe out effectively what was done, really in all the cases where district judges make credibility determinations, which is you're not sitting there. Your judgment might have been different as a district judge. Maybe if you sent this case out to 100 district judges, maybe 51 or 52 might have gone one way, and 48 or 49 might have gone another way. Or maybe 95 would have gone one way, and 5 would have gone another way. But you know what? That's the power that a district judge has under the statute to make a decision of whether or not a case is exceptional. That's the power that Congress has vested in a district judge. And once credibility decisions are made about what happened in the patent office, what happened with a particular application, what happened in the litigation, and certainly the judge went through this is all normal for patent litigation. At the end of the day, what this judge did was very thorough. We have an 11-page decision that goes over a very clear weighing of the evidence. And the fact that counsel chose procedurally not to call more witnesses, not to ask the judge for a longer hearing, not to ask for there to be a much longer evidentiary hearing on this, those are all his choices. He can't complain about it now, not having carried his burden of proof. Okay, Mr. Russo. Thank you. Mr. Weir, you have about three minutes. Well, as Mr. Russo indicates, the hearing, evidentiary hearing in this case, arose after we filed a motion for summary judgment. In which the court found materiality and they defended that motion. He found that we made our prima facie showing. They defended by submitting the testimony of Mr. Markle, a declaration of Mr. Markle. So the judge said, well, the issue here is Mr. Markle's credibility and that's why we have the evidentiary hearing with respect to Mr. Markle. So that's how it procedurally arose. I find interesting the argument he made in response to your question about memory. He basically argued that the offer for sale was so far prior to the filing of the patent application, they couldn't reasonably be expected to remember it. To me that's just an absurd argument. We made an offer of sale so far in front of the day that we filed our patent application. You can't possibly reasonably expect us to remember it. But the truth is he actually remembered it. On the issue about vexatious litigation, obviously we've got our motion for attorney's fees. It has nothing to do with the motion against the attorneys themselves. But this case has to stand out. I just can't see how it does not. There were five iterations of claim construction in this case. Each a new one and then a new one and then a new one five times. This court has held patentees to an obligation to make a pre-suit investigation for someone to come in and make one claim construction at the beginning of the case. But then change it five times tells you something. And the changes all began upon the discovery of their prior art offer for sale. So they started making these narrow claim constructions the minute they knew that we got that evidence of that prior offer for sale in order to beat their own prior art. That's exactly what happened in this case. The prior art, which the judge found, they concealed from discovery. That prior art offer for sale was concealed from discovery, which this court has also found to be sufficient to find an exceptional case in other cases. This case involved nine discovery motions. And what I think is incredible is the judge said, well, he wasn't involved in the discovery process. Is my client supposed to be faulted because the system is set up so a magistrate judge decides discovery conflicts and then the district court judge can just wave his hand and say, well, I wasn't involved so I can't really get into that? Nine discovery motions to compel basic things that any court would, financial documents from the plaintiff asking for damages. We had to move to compel that. We had to move to compel their contention discovery that they objected to on the grounds of work product. We had to file a motion on that. We had to file a protective order on an 83-category Rule 30b-6 deposition notice. They didn't withdraw one category in the meeting of counsel. We had to file a motion on that. They noticed discovery on products they withdrew. And then even after the court said they're not entitled to discovery on that, they noticed more discovery right after that, and we had to file motions on that. The court ordered them to produce documents, and what they did after being ordered to produce them, they put them in a storage room buried within 100 boxes, and counsel stood in front of the boxes and we asked, where are the documents the court ordered to produce said in there? So we had to file a motion to compel them to actually identify the documents that were ordered to produce. It is remarkable. You know, I've heard you attend these bar meetings, and I know in the past a judge needs to call these things Rambo tactics, and you go to these bar meetings and courts say, well, the patent cases are particularly contentious, there's something wrong with what's going on in the patent bar, and you hear that all the time. Judge Barrier said that in this case, that patent cases tend to be particularly contentious. But if this case with that conduct is the standard in patent cases, then not awarding attorneys' fees is exactly why. Thank you. Thank you. The case is submitted. We thank both counsel.